IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TREVOR THOMAS FREEMAN,

    Petitioner,                    No. CIV-S-10-0731 GEB CKD P

  vs.

GARY SWARTHOUT, et al.,

    Respondents.               FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a California prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. He is serving a sentence of fifteen-years-to-life imprisonment entered following a conviction for second degree murder in San Bernardino County in 1991. Petitioner presents four grounds for relief all of which concern parole suitability proceedings occurring in 2009.

I. <u>Standard For § 2254 Relief</u>

        An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

1

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1]  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

>   A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief.  Fry v. Pliler, 127 S. Ct. 2321, 2326-27 (2007).

1  919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial
2  of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court
3  must perform an independent review of the record to ascertain whether the state court decision
4  was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other
5  words, the court assumes the state court applied the correct law, and analyzes whether the
6  decision of the state court was based on an objectively unreasonable application of that law.

7        It is appropriate to look to lower federal court decisions to determine what law has
8  been "clearly established" by the Supreme Court and the reasonableness of a particular
9  application of that law.  "Clearly established" federal law is that determined by the Supreme
10 Court.  Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is
11 appropriate to look to lower federal court decisions as persuasive authority in determining what
12 law has been "clearly established" and the reasonableness of a particular application of that law.
13 Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th
14 Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo,
15 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of
16 Supreme Court precedent is misplaced).

17 II.  Breach Of Plea Agreement

18        Petitioner asserts that his 2009 parole hearing panel's decision to schedule his
19 next parole hearing three years later rather than one year constitutes a breach of his 1991 plea
20 agreement.  However, petitioner fails to point to anything suggesting the frequency with which he
21 would obtain parole hearings after the first hearing was either an express or implied term of his
22 plea agreement.  The court acknowledges that the law concerning the frequency of parole
23 hearings recently changed, see Gilman v. Schwarzenegger, 638 F.3d 1101, 1103-1105 (9th Cir.
24 2011), and is therefore different then when petitioner pled guilty.  But nothing suggests that the
25 application of the new law to petitioner is something foreclosed by the terms of his plea
26 agreement.  For these reasons, petitioner fails to show his plea agreement has been breached.

III. Ex Post Facto

Petitioner also asserts that delaying his next parole hearing for three years following his 2009 hearing violates the Ex Post Facto Clause of the Constitution.

California voters recently approved the "Victims' Bill of Rights Act of 2008," otherwise known as "Marsy's Law." Under California law as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates, such as petitioner, were denied parole for one year unless the parole hearing panel found that it was unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be delayed up to five years. Cal. Penal Code § 3041.5(b)(2) (2008). At his 2009 parole hearing, petitioner was subject to the terms of "Marsy's Law," which authorizes denial of a subsequent parole hearing for a period of up to fifteen years. Cal. Pen. Code, § 3041.5(b)(3). The shortest interval that the parole hearing panel may set is three years, applied to petitioner herein, based on a finding that petitioner "does not require a more lengthy period of incarceration . . . than seven additional years." Cal. Pen. Code, § 3041.5(b)(3)(c).

Petitioner asserts that but for "Marsy's Law" he would have a parole hearing before 2012, and he would be found suitable for parole at that hearing. Therefore, petitioner asserts that "Marsy's Law" violates his right to be free of ex post facto laws because it increases the punishment he received when he was sentenced in 1991.

Petitioner presented his ex post facto claims to all three levels of California's Courts. Answer, Exhibits 1, 3 & 5. The only court to address the claim in any detail was the Superior Court of San Bernardino County:

> As noted by the Attorney General, the application of Marsy's law does not violate the ex post facto clause. Petitioner's sentence has not been changed. Marsy's law does not alter the criteria for determining Petitioner's suitability for parole. It deals with how long a denial should be.

Answer, Ex. 2. Because the Superior Court of San Bernardino County's decision with respect to petitioner's ex post facto claim is the only decision where any supporting reasoning is provided,

4

it is that decision the court examines to determine if petitioner is barred from obtaining relief by 28 U.S.C. § 2254(d).

Clearly established federal law, as determined by Supreme Court, is as follows with respect to petitioner's ex post facto claims: a law violates the Ex Post Facto Clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. Collins v. Youngblood, 497 U.S. 37, 52 (1990). A court may find an ex post facto violation if a change in the law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995). The Court has not articulated a specific formula for "identifying those legislative changes that have a sufficient effect on . . . punishments to fall within the constitutional prohibition on [ex post facto laws]." Id. However, the Court has found that changes that create only the most "speculative and attenuated possibility of producing the prohibited effect" of increasing punishment do not run afoul of the ex post facto clause. Id.; See Garner v. Jones, 529 U.S. 244, 251 (2000) (legislative change to parole rules must at minimum create "significant risk of prolonging . . . incarceration" to constitute a violation of the Ex Post Facto Clause).

The Supreme Court has not directly addressed whether the application of "Marsy's Law" to persons convicted prior to its enactment constitutes the sufficient risk of increased punishment prohibited by the Ex Post Facto Clause. However, the Court has addressed an ex post facto challenge to a change in California law concerning the frequency of parole hearings. In Morales, 514 U.S. at 514, the Court found that a 1981 amendment to Section 3041.5, which increased the maximum deferral period of parole suitability hearings to certain individuals from one to three years, did not violate the Ex Post Facto Clause. Among other things, the Court found the fact that an inmate could always seek an expedited hearing if the inmate felt that, between scheduled hearings, circumstances had changed to the point that he or

she might at that time be found suitable for parole. Id. at 512-13. Considering this fact, the Court found: "there is no reason to conclude that the amendment will have any effect on any prisoner's actual term of confinement . . ." Id. at 512.

Similarly, in Garner, 529 U.S. 244, the Court upheld Georgia's change in the frequency of parole hearings for prisoners serving life sentences from three to eight years in the face of an ex post facto challenge. Again, the Court found it significant that inmates could seek an expedited hearing in the event of a change of circumstances:

> On the record in this case, we cannot conclude the change in Georgia law lengthened respondent's time of actual imprisonment. Georgia law vests broad discretion with the Board, and our analysis rests upon the premise that the Board exercises its discretion in accordance with its assessment of each inmate's likelihood of release between reconsideration dates. If the assessment later turns out not to hold true for particular inmates, they may invoke the policy the Parole Board has adopted to permit expedited consideration in the event of a change in circumstances.

Id. at 256.

In this case, as indicated above, the changes to the frequency of parole hearings are more extensive than in Morales and Garner and could potentially result in subsequent parole hearings occurring as much as fifteen years after the prior hearing.[2] However, as in Morales and Garner, even post-Marsy's Law the parole board here has the ability to advance a parole suitability hearing when "a change in circumstances or new information" essentially establishes a reasonable likelihood that an inmate will be found suitable for parole. Cal. Pen. Code, § 3041.5(b)(4).

This court has carefully reviewed the facts applicable to petitioner's ex post facto claim, the Superior Court of San Bernardino County's decision rejecting petitioner's ex post facto claim, clearly established federal law as determined by the Supreme Court, and California statutes and regulations related to the frequency with which parole hearings occurring after the first parole

---

[2] See Gilman, 638 F.3d 1101, 1107-08 (9th Cir. 2011) for a detailed discussion of the differences between the statutes and regulations at issue in Morales, Garner, and in California post-"Marsy's Law."

6

hearing must be held.  The court finds that the decision of the Superior Court of San Bernardino County rejecting petitioner's ex post facto claim is not contrary to, nor does it involve an unreasonable application of clearly established federal law as determined by the Supreme Court.  Again, the Superior Court found that "Marsy's Law" did not lengthen petitioner's sentence.  This conclusion is not out of line with decisions reached by the Supreme Court in both <u>Morales</u> and <u>Garner</u>, especially in light of the fact that, as in <u>Morales</u> and <u>Garner</u>, the parole board can expedite a suitability hearing if the board believes it is reasonable to assume that the inmate in question will be paroled.  Furthermore, nothing suggests that the Superior Court's decision to reject petitioner's ex post facto claim is based on an unreasonable determination of the facts.

For all of the foregoing reasons, petitioner is barred by 28 U.S.C. § 2254(d) from obtaining relief as to his ex post facto claim.[3]

IV.  <u>Psychological Evaluation</u>

In his third claim, petitioner challenges the evidentiary value of a psychological evaluation reviewed by the 2009 parole hearing panel which denied petitioner parole.  To the extent petitioner asserts the evaluation should not have been considered, his claim is not actionable under § 2254 because it is not a challenge to petitioner being in custody or the duration of his confinement.  <u>See</u> 28 U.S.C. § 2254(a).  While it is not entirely clear, petitioner may be alleging consideration of the improper psychological evaluation in question was the direct cause of his being denied parole and that constitutes a violation of the Due Process Clause of the Fourteenth Amendment.  As indicated in section V. below, however, the due process rights of a California inmate with respect to parole proceedings are very limited, and none of those rights permit this court to grant habeas relief based upon the court's perception that the evidence

---

[3] Petitioner is informed that there is a 42 U.S.C. § 1983 class action pending in this court where it is alleged that "Marsy's Law" violates the Ex Post Facto Clause of the Constitution.  The name of the case is <u>Gilman v. Fisher</u>, CIV-S-05-0830 LKK GGH P and the class of persons identified as plaintiffs in that action consist of California prisoners serving indeterminate sentences who are eligible for parole and who have been denied parole on one or more occasion.  March 4, 2009 Order at 9.  It appears petitioner is a member of that class.

1  presented to the panel was lacking in some way.  See Swarthout v. Cooke, 131 S. Ct. 859, 862-63
2  (2011) (per curiam).  For these reasons, petitioner's third claim must be rejected.

## V. Due Process

Petitioner asserts that he was denied due process in violation of the Fourteenth Amendment by the decision to deny him parole in 2009 because that decision is not supported by any evidence indicating that petitioner poses a threat of danger to the public upon release.  The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209, 221 (2005) (citations omitted).  The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  Greenholtz, 442 U.S. at 12.

California's parole statutes give rise to a liberty interest in parole protected by the federal due process clause.  Swarthout, 131 S. Ct. at 861.  In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness.  In re

Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002). However, in Swarthout the United States Supreme Court held that "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive federal requirement." Swarthout, 131 S. Ct. at 862. In other words, the Court specifically rejected the notion that there can be a valid claim under the Fourteenth Amendment for insufficiency of evidence presented at a parole proceeding. Id. at 863. Rather, the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why parole was denied." Id. at 862.

Here, the record reflects that petitioner was present at his 2009 parole hearing, he was given an opportunity to be heard throughout his hearing, and was provided with the reasons for the decision to deny parole. Pet., Ex. G. According to the Supreme Court, the Due Process Clause requires no more. For these reasons, petitioner's denial of federal due process claim must be rejected.

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time

may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 20, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

1
free0731.157